**In the Interest of Kathy Sue Burr, a Minor.
People of the State of Illinois, Petitioner-Appellee, v.
Susan Burr, Defendant-Appellant.**

Gen. No. 11,097.

Fourth District.

January 26, 1970.

Robert W. Ohlsen, of Decatur, for appellant.

Basil G. Greanias, State's Attorney of Macon County, of Decatur (Garry E. Davis, Assistant State's Attorney, of counsel), for appellee.

SMITH, J.

The matter before us arises under the Juvenile Court Act of 1965, Ill Rev Stats 1967, ch 37, § 701, et seq. However, the appeal is not by the minor, but rather an adult, her mother. The mother appeals from an order holding her in contempt for violating an order of protection resulting in a sentence of five days in jail.

She raises a number of points—some concern the Order of Protective Supervision itself, others, whether it was in fact violated. With regard to this Order, it is said that such was beyond the court's authority, being unreasonable, and if not, it was otherwise bad because entered in a context devoid of procedural safeguards. As to the contempt order, she argues lack of a finding of willful disobedience and no evidence to support one anyway.

The Order of Protective Supervision on which the contempt was based, reads:

"It is therefore ordered, adjudged and decreed that Susan Burr, mother of Kathy Sue Burr, see that minor is in school on every school day on or

before 8:10 A. M.; that if the minor Kathy Sue Burr is absent because of sickness, for each day of absence she shall present a doctor's certificate; that in violation of this order, the mother shall be sentenced to the Macon County Jail."

The mother had been made a party to the proceedings involving her daughter, hence, she was *before* the court from a jurisdictional standpoint. Under this Act this is possible, § 4-1(4) (Ill Rev Stats 1967, ch 37, § 704-1 (4)):

"If an order of protection under Section 5-5 is sought against any person, the petition shall so state, shall name that person as a respondent and give the address where he resides."

The petition alleged that her daughter was otherwise in need of supervision because of truancy. At the hearing on this petition an attorney was appointed to represent both mother and daughter. Though the truancy was admitted, the daughter was not declared a ward, rather the cause was continued for a period of one year with the minor permitted "to remain in the custody of her mother, under the friendly supervision" of the court. Neither objected. The authority for the continuance and "friendly supervision" is § 4-7(1):

"In the absence of objection made in open court by the minor, his parent, guardian, custodian or responsible relative, the court may, before proceeding to findings and adjudication, continue the hearing from time to time, allowing the minor to remain in his own home subject to such conditions as to conduct and visitation and supervision by the probation officer as the court may prescribe."

Some months after this continuance, a "Report of Violation of Friendly Supervision" was filed and a hearing

held. It turned out that there was no evidence to support the Report, but the court on its own initiative (apparently) entered the Order of Protective Supervision against the mother set forth above. Again, there was no objection. The Act with regard to protective orders as to "any person" provides in § 5–5 (1) :

> "The court may make an order of protection in assistance of or as a condition of any other order authorized by this Act. The order of protection may set forth reasonable conditions of behavior to be observed for a specified period by any person who is before the court on the original or supplemental petition. . . ."

Shortly after this order became effective, another Report of Violation was filed. As a result, and without going into all the details, the mother was cited to show cause why she should not be held in contempt for not abiding by the Order of Protective Supervision. Separate counsel for the mother was appointed and a hearing set. At the hearing before a magistrate on reference, evidence was presented of continued truancy and the mother was thereupon directed to show cause. In her own behalf she testified that the absences were due to illness; that she worked until 1:00 a. m. as a waitress; that she had two other children at home and was their sole support. She further testified that she had done nothing to keep her daughter out of school or dissuade her from going. There were a few doctor's "excuses," but not enough. The finding and holding of contempt followed.

We proceed to the points cited for reversal. Was the Order of Protective Supervision consonant with § 5–5 (1) ? The question is one of reasonableness. To us it seems eminently so. The daughter was alleged in the petition to be a "Minor 'Otherwise in Need of Supervision,' "

which definitionally, in § 2–3, includes "any minor subject to compulsory school attendance who is habitually truant from school." Section 5–5, as we have seen, states that the court can prescribe reasonable conditions of behavior to be observed by any person who is before the court.

■ An order directing a mother to so comport her behavior to insure her daughter's attendance unless ill, and that such must be supported by a physician's certificate, is not unreasonable. The Act stresses care and guidance in the environment of the home in furtherance of its purpose of maintaining "family ties." § 1–2, "Purpose and Policy." Custody was in the mother. It was she and only she who had the day-to-day ability to end the truancy. The requirement of the doctor's certificate seems to us to be a reasonable condition. After all, the court could reasonably conclude that to order a mother to have her child in school, without more, had a built-in susceptibility to easy evasion—sickness. The temptation to overuse such "excuse" could be thwarted by the requirement of a professional opinion. It also had the virtue of forestalling assertions of sickness long after the fact when proof to the contrary would in the nature of things be almost nil. It was not unreasonable to require that someone other than the child or the person responsible for her should make that determination. Foreknowledge that failure to abide by the Order could result in being "sentenced to the Macon County Jail," was simply stating the obvious, but consonant again with the Purpose and Policy of the Act that it be administered with regard to the "limits of understanding of all who appear before the court." § 1–2(2).

Was it reasonably entered? Or more to the point, were the mother's rights violated by its entry, absent notice that such was about to happen, or rather, that it might happen? As we have said there was no objection to the Order at the time of its entry. But this is

138

too easy an answer. It has the vice of leaving an implication circumambulating in the air that had there been an objection, and denied, such might be grounds for reversal here. Hence, we look elsewhere for the answer if there is one.

■■ Section 5-5(1) says that an order of protection can be entered as to anyone who is "before" the court. The mother suggests that she should have had advance notice that an order of protection as to her was being sought or indeed simply contemplated. We disagree. The Order of Protective Supervision did not deny or otherwise affect the mother with regard to her liberty or property, at least to the extent that it might require the safeguards we generally associate with due process and fair hearing. We do qualify this statement, however, by facing up to the fact that a prescription relating to the "behavior to be observed" is a constraint of sorts, but it is certainly not the type of prescription which needs to have surrounding it the panoply of safeguards needed, say, on a criminal charge. Being a respondent, she *was* a party to the proceedings. Due process does not require that an order of this kind need have more to sanction it than was present here. An order telling a mother to have her daughter in school or suffer the consequences—jail—hardly fits into the niche which requires specific notice that such is being sought, assuming jurisdiction over the mother, and the presence of counsel. These we have here. The suggestion that courts and not parents under the Juvenile Court Act are given the responsibility for educating the children of this state is in error—to put it mildly. The Act contemplates no shifting of this indisputable responsibility. The further suggestion that the mother should have been proceeded against under the School Code, Ill Rev Stats 1967, c 122, § 26-1, et seq., while a possibly proper avenue, is certainly not exclusive. Why provide for orders of protection containing "reasonable conditions of behavior to be

observed, . . . ," and then delimit it to matters not provided for in the School Code or elsewhere. To sum up, the conditions imposed upon the mother in our context were reasonable, and the means of imposition consonant with the Act, and the Act is consonant with due process. Telling a mother to behave like one is not exactly the kind of an order which demands the strictest procedural niceties. The most needed and required preconditions she had—notice to being made a party-respondent, and counsel.

Relative to this latter aspect—counsel—she says that she shared him with her daughter at the time the order of Protective Supervision was entered and that separate counsel should have been assigned to her because there was a conflict of interest between her and her daughter. She buttresses her argument by pointing to the separate appointment that in fact did take place on the rule to show cause. In our opinion, there was no conflict between her and her daughter at the time of the hearing on the report of violation, nor was there at the time the court entered the Order of Protective Supervision on its own motion. Their interests were really identical. While it was a wise move for the magistrate to appoint separate counsel on the proceedings involving just her, it must have been hard, even then, to see where any potential conflict could exist between mother and daughter, unless, of course, there was some prospect that the daughter would have to testify against her mother. Such in fact did not occur, which, of course, doesn't detract from the wisdom of separate appointment.

■ The question of contempt. Was the evidence sufficient to justify holding the mother in contempt and if it was, should there have been a specific finding of willful disobedience? The order reads:

"Susan Burr found to be in contempt of court for failure to obey court's order of 20 March 1968

and sentenced to a term of five days in the Macon County Jail."

Section 5-6 of the Act states that orders of protection may be enforced by citation to show cause for contempt of court by reason of any violation thereof. There was evidence, as we have seen, of absences without excuses. While not the most ideal working hours, to 1:00 a. m., still such standing alone, is not inexorably indicative of helplessness in obeying the terms of the order. Her statement that she did nothing to hinder or dissuade attendance and the stipulation that she said she did all she could to keep the girl in school presents only a question of fact when placed alongside the unexcused absences—a question of fact as to whether or not the disobedience was willful. Certainly a trier of the fact could, and here did, resolve such question.

██ ██ We will agree that to sustain the finding of contempt, the mother's conduct must be willful and intentional which subsumes ability to comply. Whatever may be the rule on direct contempts, at least in the situation before us, there need be no specific finding of willful disregard or disobedience if the evidence justifies that conclusion. In our opinion the evidence did, or to phrase it another way, as a reviewing court, the order appealed from is supported by the evidence, and we will therefore not disturb it. The order appealed from is affirmed.

Affirmed.

CRAVEN, P. J. and TRAPP, J., concur.